**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:19-CV-00107-HBB**

**ROBIN LONG**                                                                                  **PLAINTIFF**

**VS.**

**ANDREW SAUL, COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**                                          **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Robin Long ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both the Plaintiff (DN 13) and Defendant (DN 18) have filed a Fact and Law Summary.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED,** and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10).   By Order entered November 26, 2019 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

1

FINDINGS OF FACT

Plaintiff protectively filed an application for Disability Insurance Benefits on January 9, 2016 (Tr. 178-82).[1]   Plaintiff alleged that he became disabled on August 13, 2015, as a result of fibromyalgia, gastroparesis, depression, Raynaud's disease, Irritable Bowel Syndrome, and weakness on the left side of body (Tr. 17, 199).   On January 31, 2018, Administrative Law Judge Maribeth McMahon ("ALJ") conducted a video hearing from Paducah, Kentucky (Tr. 17, 38-41). Plaintiff and her attorney, Sara Martin Diaz, participated from Owensboro, Kentucky (Id.).   James B. Adams, an impartial vocational expert, testified during the video hearing (Id.).

In a decision dated August 14, 2018, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 17-30).   At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 23, 2015 (Tr. 19-20).   At the second step, the ALJ determined that Plaintiff has the following "severe" impairments: degenerative disc disease, degenerative joint disease, status post right ankle fracture, obesity, and fibromyalgia (Tr. 20).   The ALJ also determined that Plaintiff's gastroparesis, irritable bowel syndrome, Raynaud's disease, tremor in the right hand, thyroid condition, depression, and anxiety are "non-severe" impairments within the meaning of the regulations (Tr. 20-23).

At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in

_____

[1] The Administrative Law Judge's decision indicates Plaintiff filed her application on December 28, 2015 (Tr. 17). But the administrative record does not appear to substantiate that date.   The Lead Protective Filing Worksheet is dated January 9, 2016 (Tr. 178) and the application is dated January 29, 2016 (Tr. 181).   Therefore, the Court has indicated January 9, 2016 as the protective filing date of Plaintiff's application.

Appendix 1 (Tr. 24).   The ALJ then found that Plaintiff has the residual functional capacity (RFC) to perform a range of light work because she can frequently climb ramps and stairs, but never ladders, ropes, or scaffolds; and she can frequently stoop, kneel, crouch, and crawl (Tr. 24).   At the fourth step, the ALJ relied on testimony from the vocational expert to find that Plaintiff is capable of performing her past relevant work as a field office coordinator (Tr. 30).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from August 13, 2015 through the date of the decision (Tr. 30).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 177).   The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

3

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; <u>Cline v. Comm'r of Soc. Sec.</u>, 96 F.3d 146, 148 (6th Cir. 1996); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); <u>Barnhart v. Walton</u>, 535 U.S. 212, 214 (2002); <u>Abbott v. Sullivan</u>, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

4

1)      Is the claimant engaged in substantial gainful activity?

2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)      Does the claimant have the RFC to return to his or her past relevant work?

5)      Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fourth step.

Finding No. 3

1.  Arguments of the Parties

Plaintiff argues substantial evidence does not support the ALJ's finding that her mental impairments are "nonsevere" (DN 13-1 PageID #1212-15).  In making the argument, Plaintiff asserts that the ALJ should have accorded more weight to the opinion of consultative psychological examiner, Leslie Jenkins, Ph.D., than to the opinion of the non-examining state agency psychological consultant, Mary K. Thompson, Ph.D. (Id.).[2]  Plaintiff believes the June 2016 opinion of Dr. Jenkins is more consistent with her testimony and the worsening of her condition

---

[2] To the extent Plaintiff asserts that Dr. Jenkins' opinion should have received "controlling weight" (DN 13-1 PageID # 1213), she is mistaken because "opinions from nontreating and nonexamining sources are never assessed for "controlling weight."   Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013); 20 C.F.R. § 404.1527(c).   Instead, administrative law judges weigh these opinions based on whether there is an "examining relationship", supportability, consistency, specialization of the source, and other factors" that "tend to support or contradict the opinion".   20 C.F.R. § 404.1527(c)(1), (c)(3)-(6); Gayheart, 710 F.3d at 376.

that is evidenced in the April through September 2017 treatment records from Pennyroyal Mental Health Center (Id. citing Tr. 971-77, 1008-16, 1043-63, 1101-20).

Plaintiff also asks the Court to consider the Mental Residual Functional Capacity Questionnaire form that her therapists, Rachael Cole, APRN and Dave Brown, LCSW, filled out on December 20, 2018 (DN 13-1 PageID # 1212-13 citing Tr. 9-10).  Plaintiff submitted this evidence to the Appeals Council in connection with her request for review of the ALJ's decision (Id.).  She argues the Appeals Council erred in failing to make it an exhibit and consider it new and material evidence (Id.).  Plaintiff contends the Court should consider the document "in making a determination" whether the ALJ's decision should be reversed and, alternatively, whether to remand the case to the Commissioner for a more complete assessment of her claim (Id. PageID # 1213, 1215).

Defendant points out that the ALJ found Plaintiff has severe impairments and, in the steps that followed, considered all the evidence and evaluated the combined effects of Plaintiff's severe and non-severe impairments (DN 18 PageID # 1231-32).   For this reason, Defendant contends the ALJ did not commit reversible error (Id.).

2.  Discussion

At the second step in the sequential evaluation process a claimant must demonstrate she suffers from a "severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . ."  20 C.F.R. § 404.1520(a)(4)(ii); Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). In this case, the ALJ determined that Plaintiff's medically determinable mental impairments of

depression and anxiety, considered singly and in combination, are "nonsevere" because they do not cause more than minimal limitation in her ability to perform basic mental work activities (Tr. 21).   Plaintiff disputes this finding.

To satisfy the "severe" requirement a claimant must demonstrate the impairment or combination of impairments "significantly limit" her physical or mental ability to do "basic work activities."   *See* 20 C.F.R. § 404.1522(a).[3]   The determination whether a mental condition "significantly limits" a claimant's ability to do one or more basic work activities is based upon the degree of functional limitation in four broad functional areas that are known as the "paragraph B" criteria.   20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E.   They are: (1) "[u]nderstand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself."   20 C.F.R. § 404.1520a(c)(3). These four areas of mental functioning are evaluated on the following five-point rating scale: "None, mild, moderate, marked, and extreme."   20 C.F.R. § 404.1520a(c)(4).

The ALJ accurately summarized all the medical evidence in the record regarding Plaintiff's depression and anxiety (Tr. 21-22).   Specifically, the June 2016 opinion of Leslie Jenkins, Ph.D., the July 2017 opinion of Mary K. Thompson, Ph.D., and records from Pennyroyal Mental Health regarding treatment Plaintiff received from April through October 2017 (Tr. 21-22).

Dr. Jenkins conducted a consultative psychological examination and opined: Plaintiff's capacity to understand, retain, and follow instructions towards the performance of simple repetitive tasks appears **not** affected; her ability to sustain attention and concentration towards the

---

3  The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 404.1522(b).

completion of tasks under time constraints appears affected to a **slight** degree; her ability to tolerate stress and the pressure of day-to-day employment appears affected to a **moderate** degree; and her capacity to respond appropriately to supervisors, co-workers, and the general public in a work setting appears **not** affected (Tr. 700-01, emphasis in original text).   The ALJ afforded "significant weight to all of Dr. Jenkins opinion except **moderate** limitations regarding stress and pressure" (Tr. 22, emphasis added).   The ALJ explained that while Dr. Jenkins noted limited stress tolerance, she stated that Plaintiff had "good supports and coping abilities" (Id.).   Further, the ALJ observed that recent mental health treatment notes from Pennyroyal Mental Health indicated Plaintiff is able to utilize coping skills and not focus on her anxiety (Id.).   The ALJ commented that while Plaintiff may have some mild limitations with stress tolerance, there is "nothing indicating any moderate limitations" (Id.).   Contrary to Plaintiff's assertion, these findings are supported substantial evidence in the record and comport with applicable law.   *See* 20 C.F.R. § 404.1527(c)(1), (c)(3)-(6) (administrative law judges weigh nontreating and nonexamining source opinions based on whether there is an examining relationship, supportability, consistency, specialization of the source, and other factors" that "tend to support or contradict the opinion"); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013).

Mary K. Thompson, Ph.D., a non-examining state agency psychological consultant, reviewed the record and opined that Plaintiff had a **mild** degree of limitation in activities of daily living; **mild** difficulties in maintaining social functioning; **mild** difficulties in maintaining concentration, persistence or pace; and **none** as to repeated episodes of decompensation, each of

extended duration (Tr. 107).[4]   The ALJ gave great weight to Dr. Thompson's opinion because she found it consistent with the evidence as a whole, including the mental health treatment notes from Pennyroyal Mental Health (Tr. 22).   Contrary to Plaintiff's assertion, these findings are supported by substantial evidence in the record and comport with applicable law.   *See* 20 C.F.R. § 404.1527(c)(1), (c)(3)-(6); <u>Gayheart</u>, 710 F.3d at 376.

Plaintiff argues the Court's substantial evidence evaluation should include consideration of the Mental Residual Functional Capacity Questionnaire form filled out by her therapists, Rachael Cole, APRN and Dave Brown, LCSW, on December 20, 2018 (DN 13-1 PageID # 1212-13 citing Tr. 9-10).   But Plaintiff's contention ignores well-established case law.   The Sixth Circuit has specifically held that when the Appeals Council considers new evidence, but declines review, the district court cannot consider the new evidence in deciding whether to uphold, modify, or reverse the final decision of the Commissioner.   *See* <u>Cline v. Comm'r of Soc. Sec.</u>, 96 F.3d 146, 148 (6th Cir. 1996); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695-696 (6th Cir. 1993).   The Sixth Circuit's holding makes sense here because the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.   <u>See</u> 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; <u>Cline</u>, 96 F.3d at 148; <u>Cotton</u>, 2 F.3d at 695-696.   Thus, the Court is reviewing the decision of the ALJ, not the Appeals Council, and the evidence in the administrative record when the ALJ rendered her decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; <u>Cline</u>, 96 F.3d at 148; <u>Cotton</u>, 2 F.3d at 695-696.

---

4 When Mary K. Thompson, Ph.D., expressed her opinion in July 2016, these were the four broad functional areas known as the "paragraph B" criteria.   By the time the ALJ made her findings in August 2018, the four broad functional areas had been revised.

9

The Court can consider the new evidence for the limited purpose of determining whether a prejudgment remand, pursuant to sentence six of 42 U.S.C. § 405(g), is appropriate.  Cline, 96 F.3d at 148; Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 174-175 (6th Cir. 1994). When the Court issues such a prejudgment remand order, under sentence six of 42 U.S.C. § 405(g), it does not address the correctness of the administrative decision.  Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991).  "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and the new evidence might have changed the outcome of the prior proceeding."  Id.

The Court will begin by noting that Plaintiff has not expressly argued for and explained why a sentence six remand is appropriate.  Instead, Plaintiff seeks a post-judgment remand, pursuant to sentence four of 42 U.S.C. §405(g), in conjunction with the Court reversing the ALJ's decision (DN 13-1 PageID # 1212-13, 1215).

Certainly, the opinion evidence is "new" because it was issued four months after the ALJ issued her decision in August 2018.  *See* Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990); Ferguson v. Comm'r of Soc. Sec., 628 F.3d 269, 276 (6th Cir. 2010); Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001).   But Plaintiff has not demonstrated there is a reasonable probability that the ALJ would have reached a different disposition of her disability claim if the ALJ had the opportunity to consider the new evidence.   *See* Ferguson, 628 F.3d at 276; Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988).   The limitations expressed by Rachael Cole, APRN and Dave Brown, LCSW, address the time frame September 2017 to December 2018 (Tr. 9-10).   But their limitations are not consistent with the April through October 2017 treatment records from Pennyroyal Mental Health.   More importantly, Plaintiff has not substantiated the

10

limitations expressed by Rachael Cole, APRN and Dave Brown, LCSW, by providing their treatment notes for November 2017 through December 2018.    As Plaintiff has not shown the new evidence is material, the Court concludes a remand pursuant to sentence six of 42 U.S.C. §405(g) is not appropriate.

In sum, the ALJ found that Plaintiff's medically determinable mental impairments of depression and anxiety, considered singly and in combination, are "nonsevere" because they do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities (Tr. 21).    For the reasons set forth above, the ALJ's finding is supported by substantial evidence and comports with applicable law.    Further, the ALJ expressly indicated the no more than minimal degree of limitation imposed by Plaintiff's depression and anxiety are reflected in the RFC assessment (Tr. 23).[5]

Finding No. 6

1.   Arguments of the Parties

Plaintiff challenges the RFC determination, in Finding No. 5, by making two arguments (DN 13-1 PageID # 1208-11, 1215-17).    First, Plaintiff claims that substantial evidence does not support the ALJ's assignment of weight to the opinion of Dr. Brey (the treating rheumatologist), the opinion of Andria Brooks, D.C. (the treating chiropractor), and the restriction on fine manipulation in the left hand expressed by Dr. Back (the nonexamining state agency physician)

---

5 The Sixth Circuit has found it "legally irrelevant" that some of a claimant's impairments are found non-severe, when other impairments are found to be severe, because a finding of severity as to even one impairment clears the claimant of step two of the analysis and the administrative law judge should consider both the severe and non-severe impairments in the remaining steps.   *See* Anthony v. Astrue, 266 F. Appx. 451, 457 (6th Cir. 2008) (citing Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987)).

(Id. PageID # 1208-11).   Secondly, Plaintiff argues substantial evidence does not support the ALJ's finding that Plaintiff's conditions allow her to perform light work (Id. PageID # 1215-17). Plaintiff argues the ALJ should have found the combined effect of Plaintiff's impairments limit her to less than sedentary work (Id. PageID # 1215).

Defendant contends that substantial evidence supports the ALJ's RFC determination (DN 18 PageID # 1232-40).   Defendant asserts the ALJ's assignment of weight to the medical opinions of Dr. Brey, Andria Brooks, D.C., and Dr. Back is supported by substantial evidence in the record and comports with applicable law (Id. PageID # 1236-40 citing Tr. 29).

2.   Discussion

The RFC finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546(c).   The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c).   Thus, in making the RFC finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations.   20 C.F.R. §§ 404.1527(c), 404.1529(a).

The Court will begin with the ALJ's assignment of weight to Dr. Brey's opinion.   On June 28, 2017, Dr. Brey filled out a Physical Residual Functional Capacity Questionnaire form (Tr. 979-83).   Dr. Brey indicated a diagnosis of fibromyalgia with symptoms of pain he described as "chronic diffuse" but did not quantify its severity (Tr. 979).   In response to a request for clinical findings and objective signs, Dr. Brey merely responded "[t]ender all over" (Id.).   Regarding limitations, Dr. Brey opined that during a typical workday Plaintiff would "[o]ccasionally"

12

experience pain or other symptoms severe enough to interfere with her attention and concentration needed to perform even simple work tasks (Tr. 980). He indicated Plaintiff was capable of tolerating low stress jobs (Id.). Dr. Brey opined that Plaintiff can sit a total of 15 minutes at one time, stand a total of 15 minutes at one time, sit a total of about four hours in an eight-hour work day (with normal work breaks), and stand/walk about two hours in an eight-hour work day (with normal work breaks) (Tr. 980-81). He also opined that in an eight-hour workday Plaintiff needed to walk around every 30 minutes for as long as 10 minutes (Tr. 981). Dr. Brey indicated during an eight-hour workday Plaintiff will need to shift her position at will from sitting to standing or walking and to take unscheduled breaks (Id.). He opined that Plaintiff can rarely lift and carry 20 pounds and occasionally lift and carry 10 pounds or less (Id.). Dr. Brey indicated that Plaintiff can rarely climb stairs but can occasionally look down on a sustained basis, turn her head right or left, look up, hold her head in a static position, twist, stoop, crouch/squat, and climb stairs (Tr. 982). Dr. Brey also specifically indicated Plaintiff did not have any limitation with reaching, handling, or fingering (Id.). He opined that Plaintiff's impairments would likely produce "good days" and "bad days" and that she is likely to be absent from work about four days per month due to her impairments or treatment (Id.).

After accurately summarizing the limitations expressed in Dr. Brey's opinion, the ALJ explained that overall the limitations would preclude all work activity (Tr. 29, 978-83).[6] After consideration of the entire record, the ALJ afforded only partial weight to Dr. Brey's opinion (Id.).

---

6 The ALJ provided an accurate summary of the medical evidence in the record, including the records of Dr. Brey (the treating rheumatologist), concerning Plaintiff's physical impairments (Tr. 24-30, 470-501,502-34, 703-08, 818-35, 1133-38).

The ALJ explained she gave great weight to Dr. Brey's conclusion that Plaintiff had no significant limitations with reaching, handling, or fingering (Tr. 29, 982). The ALJ also explained she "afforded little weight" to the rest of the conclusions in Dr. Brey's opinion because the limitations were inconsistent with the evidence as a whole, including Dr. Brey's own treatment notes (Id. citing Tr. 29). The ALJ's assignment of weight to Dr. Brey's opinion is supported by substantial evidence in the record and comports with applicable law. 20 C.F.R. § 404.1527(c)(1)-(6); Gayheart, 710 F.3d at 376.

On June 5, 2017, Andria Brooks, D.C. (the treating chiropractor) filled out a Physical Residual Functional Capacity Questionnaire that indicates Plaintiff received 19 chiropractic adjustments and adjunctive therapy to improve her range of motion but not to address her complaints of constant and severe low back pain that extended down the right hip and leg to her right foot (Tr. 872-76). Ms. Brooks opined that Plaintiff's pain or other symptoms were severe enough to constantly interfere with her attention and concentration needed to perform even simple work tasks and made her incapable of even low stress jobs (Tr. 873). Ms. Brooks opined that Plaintiff could walk less than a city block without rest or severe pain, could sit 15 minutes at one time, stand 15 minutes at one time, and can sit a total of less than two hours in an eight-hour workday, and stand/walk a total of less than two hours in an eight-hour workday (Tr. 873-74). Further, she indicated that every 20 minutes, during an eight-hour workday, Plaintiff will need to get up and walk around for as long as five minutes (Tr. 874). Ms. Brooks opined that Plaintiff will also need to shift positions at will, and every 30 to 45 minutes take unscheduled rest breaks for five to 10 minutes before returning to work (Id.). Additionally, Plaintiff will need to elevate her legs above her hips for half of the eight-hour workday and can rarely lift and carry less than

14

10 pounds (Id.).   Ms. Brooks opined that Plaintiff can occasionally look down, look up, hold her head in a static position; rarely turn her head right or left, twist, stoop, crouch/squat, and climb stairs; and never climb ladders (Tr. 875).

The ALJ provided an accurate summary of Ms. Brooks' treatment records and opinion (Tr. 28-29, 872-76, 1030-42).   The ALJ observed that Ms. Brooks' limitations would preclude Plaintiff from any work (Tr. 28).   The ALJ explained that she gave little weight to the opinion for several reasons (Id.).   First, a chiropractor is not an acceptable medical source (Id.).   Most importantly, the limitations were internally inconsistent with Ms. Brooks treatments, as well as evidence in the record (Tr. 29).   The ALJ pointed out that imaging of Plaintiff's lumbar spine revealed only minor abnormalities (Id.).   While Plaintiff has findings suggesting some sensory neuropath, the ALJ explained there is no evidence of significant neurological deficits, such as motor, sensory, or reflex loss (Id.).   Additionally, while Plaintiff has some limitations, the ALJ indicated the clinical and objective findings fail to reveal limitations as limited as suggested by Ms. Brooks (Id.).   The ALJ's assignment of weight to Dr. Brooks' opinion is supported by substantial evidence in the record and comports with applicable law.   20 C.F.R. § 404.1527(c)(1)-(6); Gayheart, 710 F.3d at 376.

The nonexamining state agency physician, Dr. Back, reviewed the record and opined while Plaintiff has the exertional capacity to perform light work, she has some postural limitations, a manipulative limitation, no visual limitations, no communicative limitations, and no environmental limitations (Tr. 109-10).   Regarding the manipulative limitation, Dr. Back indicated due to tremors in the left arm fingering (fine manipulation) is "[l]imited" (Tr. 110).

The ALJ accurately summarized the limitations expressed by Dr. Back (Tr. 29).   As to the manipulative limitation, the ALJ observed that Dr. Back failed to specify the extent to which Plaintiff was limited and that Dr. Brey did not report any limitations regarding Plaintiff's ability to handle or finger (Tr. 29, 110, 982).   Further, the ALJ specified there is no evidence in the record of any significant limitations regarding Plaintiff's use of her hands (Id).   Therefore, the ALJ announced she would not issue any manipulative limitations (Tr. 29).   However, the ALJ explained that the remaining limitations expressed by Dr. Back are given "great weight" because they are consistent with the evidence as a whole (Tr. 29, 108-11).   The ALJ's assignment of weight to Dr. Back's opinion is supported by substantial evidence in the record and comports with applicable law.   20 C.F.R. § 404.1527(c)(1), (c)(3)-(6); Gayheart, 710 F.3d at 376.

In making the RFC finding the Administrative Law Judge assessed Plaintiff's subjective allegations (Tr. 24-29).   20 C.F.R. § 404.1529(a).   Plaintiff's subjective statements about the pain or other symptoms she is experiencing will not, taken alone, establish she is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged.   20 C.F.R. § 404.1529(a).   Consistent with applicable law, the ALJ determined the objectively established medical conditions are not of such severity that they can reasonably be expected to produce the pain or other symptoms Plaintiff is allegedly experiencing (Tr. 25-29).   Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986)   Because the reported pain and other symptoms suggested impairments of greater severity than can be shown by objective medical evidence, the ALJ considered other information and factors that may be relevant to the degree of pain or other symptoms she is experiencing.   20 C.F.R. § 404.1529(c)(3).   For example, the ALJ

16

considered Plaintiff's level of daily activity in determining the extent to which her pain and other symptoms are of disabling severity (Tr. 25-29).   20 C.F.R. § 404.1529(c)(3)(i); <u>Bogle v. Sullivan</u>, 998 F.2d 342, 348 (6th Cir. 1993); <u>Blacha v. Sec'y of Health & Human Servs.</u>, 927 F.2d 228, 231 (6th Cir. 1990).   The ALJ also considered the extent to which there are any conflicts between Plaintiff's subjective statements and the rest of the evidence (Tr. 25-29).   20 C.F.R. § 404.1529(c)(4).   The ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain and other symptoms to the extent she testified.   The ALJ's assessment of Plaintiff's subjective statements, about pain and other symptoms, are supported by substantial evidence and fully comport with applicable law.   Additionally, the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence and comports with applicable law.   In sum, there is no merit to Plaintiff's challenges to the ALJ's Finding No. 6.

Finding No. 7

1.   Arguments of the Parties

Plaintiff challenges the determination that she is capable of performing her past relevant work as a field office coordinator (DN 13-1 PageID # 1211-12).   Plaintiff asserts the ALJ's lone hypothetical question and the vocational expert's response is insufficient to establish whether Plaintiff's past work, as both actually and generally performed, exceeded her RFC (<u>Id.</u>).   Plaintiff contends the ALJ should have conducted additional questioning (<u>Id.</u>).   Plaintiff points out, in response to her questions, the vocational expert confirmed that the need for multiple unpredictable breaks during the workday and the need to be limited to simple one to three step tasks would preclude Plaintiff from being able to perform her past relevant work (<u>Id.</u> citing Tr. 80-81).   Alternatively, Plaintiff argues because her past relevant work was semi-skilled and transferability

17

is an issue according to the GRID rules, the ALJ was required to make certain findings supported with appropriate documentation because her skills are not transferable (Id. citing Social Security Ruling 82-41(6)).

Defendant argues the hypothetical question to the vocational expert accurately reflects the limitations in the RFC (DN 18 PageID # 1240-42).   Defendant explains that the ALJ reasonably found that Plaintiff did not have any significant mental functional limitations (Id.).   Further, the ALJ discounted Dr. Brey's unscheduled break limitation (Id.).   Defendant contends that Plaintiff's reliance on the GRID rules is misguided because she can perform her past relevant work (Id.).   Defendant asserts the vocational expert's testimony provided substantial evidence for the ALJ to find Plaintiff has the RFC to perform her past relevant job as a field office coordinator as actually and generally performed (Id. citing Tr. 30, 80).   Further, Plaintiff has not cited any support for her contention that the ALJ needed to present more than one hypothetical question to the vocational expert (Id.).   Defendant points out that Plaintiff had the burden to demonstrate she could not perform her past work (Id.).

2.   Discussion

Finding No. 7 is a step four determination whether Plaintiff can return to her past relevant work.   At this step in the sequential evaluation process, administrative law judges use the claimant's RFC to determine whether she can return to her past relevant work.   20 C.F.R. § 404.1520(e).   The relevant inquiry is whether the claimant can return to her past type of work rather than just her past job.   Studaway v. Sec'y of Health & Human Servs., 815 F.2d 1074, 1076 (6th Cir. 1987).   To support a finding that a claimant can perform her past relevant work, administrative law judges must explain why the claimant can perform the demands and duties of

her past job as actually performed, or as ordinarily required by employers throughout the national economy.  *See* <u>Studaway</u>, 815 F.2d at 1076; *see also* 20 C.F.R. §§ 404.1565, 416.965; Social Security Ruling 82-61.  The claimant has the burden to show an inability to return to a past relevant job, <u>Allen v. Califano</u>, 613 F.2d 139, 145 (6th Cir. 1980), or to prove that a past job should not be considered relevant.  <u>Smith v. Sec'y of Health & Human Servs.</u>, 893 F.2d 106, 109-10 (6th Cir. 1989).

Most of Plaintiff's challenge to Finding No. 7 fails because, as explained in the preceding sections, the RFC in Finding No. 6 is supported by substantial evidence in the record and comports with applicable law.  To the extent Plaintiff relies on the Grid Rules in Appendix 2 of the regulations, her argument fails because the Grid Rules are utilized at the fifth step when evaluating a claimant's ability to engage in substantial gainful activity other than her vocationally relevant past work.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Section 200.00.

All that remains is Plaintiff's claim that the ALJ should have asked additional questions to the vocational expert to establish whether her past relevant work, as both actually and generally performed, exceeded her RFC.  During the administrative hearing, the vocational expert testified that Plaintiff's past relevant work as field office coordinator is listed in the Dictionary of Occupational Titles (No. 166.227-010) as light work with an SVP of 7 (Tr. 80).  The ALJ's hypothetical question set forth the limitations expressed in the RFC (<u>Id.</u>).  The ALJ then asked "[i]s the hypothetical individual still able to perform the claimant's past work?" (<u>Id.</u>).  The vocational expert responded "[y]es, [y]our [h]onor" (<u>Id.</u>).  Notably, the vocational expert did not qualify his answer by indicating as actually or generally performed.  Plaintiff had the opportunity to cross-examine the vocational expert on this issue, and she did not.  Thus, Plaintiff has failed to

sustain her burden of showing an inability to return to this past relevant job.   *See* <u>Allen</u>, 613 F.2d at 145.   Further, the vocational expert's testimony provides substantial evidence to support the ALJ's finding that Plaintiff is able to perform her past relevant work as it is actually and generally performed (Tr. 30).   For the above reasons, Finding No. 7 is supported by substantial evidence in the record and comports with applicable law.

Timely Decision

1.   Arguments of the Parties

Plaintiff argues the ALJ failed to issue the decision in a timely manner, resulting in undue prejudice and harm to Plaintiff (DN 13-1 PageID # 1217-18).   Plaintiff explains that the ALJ conducted the hearing on January 31, 2018 and nearly eight months later issued the decision on August 14, 2018 (<u>Id.</u>).   Plaintiff asserts the ALJ's memory of her case could not have been fresh (<u>Id.</u>).   Plaintiff contends her ability to pursue an appeal in this case and file a new application were prejudiced by the eight-month delay (<u>Id.</u>).   Plaintiff points out as to any new claim there will be eight months of medical records that will never be seriously considered by any administrative law judge due to *res judicata* because her alleged onset of disability will be August 15, 2018 (<u>Id.</u>).

Defendant argues the Court should reject Plaintiff's claim that the ALJ issued an untimely opinion, resulting in undue prejudice and harm (DN 18 PageID # 1243).   Defendant points out the ALJ issued the decision almost seven months after the administrative hearing (<u>Id.</u>).   Defendant also points out that Plaintiff has not cited any authority supporting her claim that such a delay violated an imposed time limitation (<u>Id.</u>).   Additionally, Defendant asserts that Plaintiff did not seek to submit additional evidence to the ALJ following the hearing (<u>Id.</u>).   For these reasons,

Defendant contends that Plaintiff has not demonstrated the delay constitutes a denial of due process or harmful prejudice (Id.).

    2.   Discussion

    The ALJ conducted the administrative hearing on January 31, 2018 and issued the decision on August 14, 2018 (Tr. 38, 17-30). This means the decision issued six months and 14 days or 195 days after the administrative hearing. While Plaintiff alleges her health declined during this time frame, she did not ask the ALJ for leave to submit additional medical evidence. And, when Plaintiff requested Appeals Council review, she did not raise this claim substantiated with records of medical treatment she received during the six months and 14 days. Although Plaintiff raised the claim here, she failed to cite any law or policy supporting her argument and has not substantiated her bare assertions of prejudice with records of medical treatment received during the six months and 14 days.[7] Additionally, the Court has not found any case law holding that claimants have a due process right to have an administrative law judge decision within six months of the administrative hearing. *Cf.* Heckler v. Day, 467 U.S. 104, 119 (1984) (federal courts cannot prescribe mandatory deadlines for processing Social Security disability claims); McDonald v. Astrue, 465 F. App'x 554, 556 (2d Cir. 2012) (no due process right to have an application adjudicated in less than 270 days); Littlefield v. Heckler, 824 F.2d 242, 247 (3d Cir. 1987) (nine month delay between issuance of a recommended decision and the Appeals Council's issuance of a final decision does not violate due process). In sum, Plaintiff's argument is without merit

---

7 The Court could have considered such evidence for the limited purpose of determining whether a prejudgment remand under sentence six of 42 U.S.C. § 405(g) is appropriate. Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 174-175 (6th Cir. 1994).

because she has not demonstrated the ALJ's decision is contrary to applicable law merely because it issued six months and 14 days after the administrative hearing.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

Copies:       Counsel